IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

CASE NO. 09-3195

_____

UNITED STATES OF AMERICA

Appellee

v.

DR. WILLIAM KING

Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

_____

**REPLY BRIEF OF APPELLANT**

Michael P. Lytle, Esq.
Warnken, LLC, Attorneys at Law
300 E. Joppa Road, Suite 303
Towson, Maryland 21286
443-921-1100
443-921-1111 (fax)

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................. i

**ARGUMENT** ......................................................................... 1

**I.    APPELLANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM, BASED ON TRIAL COUNSEL'S PREJUDICIAL SERIOUS ATTORNEY ERROR IN FAILING TO LITIGATE THE VOLUNTARINESS OF MRS. KING'S CONSENT TO SEARCH AND SEIZE COMPUTERS, IS RIPE FOR CONSIDERATION ON DIRECT APPEAL.** ........................................ 1

**II.   TRIAL COUNSEL'S FAILURE TO SEEK THE SUPPRESSION OF THE COMPUTER EVIDENCE WAS A PREJUDICIAL SERIOUS ATTORNEY ERROR THAT ENTITLES DR. KING TO BE PLACED IN THE POSITION THAT HE WOULD HAVE BEEN HAD THE MOTION BEEN FILED.  THUS DR. KING IS ENTITLED TO THE RIGHT TO FILE A BELATED SUPPRESSION MOTION AND TO A HEARING ON THAT MOTION.** ........................................................... 4

**CONCLUSION** ...................................................................... 8

**CERTIFICATE OF BAR MEMBERSHIP** .................................... 9

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)** ........................ 9

**CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS** ............... 10

**CERTIFICATE OF VIRUS CHECK** ........................................ 10

**CERTIFICATE OF SERVICE** ............................................. 10

# TABLE OF AUTHORITIES

## Cases

Bumper v. North Carolina, 391 U.S. 543 (1968)..................................................6

Ford v. State, 184 Md. App. 535 (2009)............................................................6

Nix v. Whiteside, 475 U.S. 157 (1986) ..................................................5

Strickland v. Washington, 466 U.S. 668 (1984) ......................................5

United States v. Carson, 969 F.2d 1480 (3d. Cir. 1992)......................................6

United States v. Crandell, 554 F.3d 79 (3d. Cir. 2009) ......................................7

United States v. Headley, 923 F.2d 1079 (3d. Cir. 1991)...................................6

United States v. Parson, 599 F. Supp. 2d 592 (W.D. Pa. 2009) ........................7

United States v. Shaefer, Michael & Clairton Slag, Inc., 637 F.2d 200 (3d. Cir. 1980) ...........................................................................................6

United States v. Wilson, 413 F.3d 382, 388 (3d. Cir. 2005) ..............................7

## Rules

Fed. R. Cr. P. 12(b)(3) ..........................................................................3

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

CASE NO. 09-3195
_____

UNITED STATES OF AMERICA

Appellee

v.

DR. WILLIAM KING

Appellant

_____

## ARGUMENT

**I.    APPELLANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM, BASED ON TRIAL COUNSEL'S PREJUDICIAL SERIOUS ATTORNEY ERROR IN FAILING TO LITIGATE THE VOLUNTARINESS OF MRS. KING'S CONSENT TO SEARCH AND SEIZE COMPUTERS, IS RIPE FOR CONSIDERATION ON DIRECT APPEAL.**

In Brief of Appellee, the Government asserts that Dr. King's ineffective assistance of counsel claim is not ripe for consideration on direct appeal "because the present record is insufficient for the Court meaningfully to review this claim." (Brief of Appellee at 23).  The Government further asserts that this issue should instead be raised in a collateral proceeding where a further evidentiary record may be developed.  (Brief of Appellee at 23-24). As an initial matter, Dr. King does not dispute that a hearing is necessary to determine whether the consent given by Mrs.

1

King was in fact valid. Dr. King does not, however, believe that a hearing is necessary to determine whether trial counsel committed a prejudicial serious attorney error. Dr. King does not believe that such a hearing is needed because the record, as developed in the District Court, is sufficient for this Court to make that finding. (Brief of Appellant at 25).

One of the reasons that the Government contends that a collateral hearing is required is because the Government believes that trial counsel's failure to have sought the suppression of the computer evidence may have been part of a trial strategy. (Brief of Appellee at 29). Trial counsel's failure could not have been part of a sound trial strategy because the evidence had no value for the defense and only had value for the Government. The evidence retrieved from the computers was key evidence in the Government's case to support its claims that Dr. King was "upcoding" and submitting claims for "ghost visits." (Brief of Appellant at 23). It could only have been trial counsel's lack of diligence, not trial strategy that resulted in trial counsel's (1) failure to file a motion to suppress based on the validity of Mrs. King's consent, and (2) failure to object at trial when the Government offered the evidence. There simply could have been no sound trial strategy in this case that would have involved trial counsel permitting the Government to use damning evidence which was illegally obtained against Dr. King.

In the Government's argument that a hearing is required to determine whether trial counsel committed a prejudicial serious attorney error, the Government states that Dr. King's "argument assumes that trial counsel knew, in advance of trial, what [Dr. King's] wife would say about the consent". (Brief of Appellee at 26). The Government is incorrect. First, this record supplies very strong reasons to believe that trial counsel was aware of what Dr. King's wife would say. Trial counsel demonstrated that he was aware of what Mrs. King would say through his questioning of several witnesses about the consent prior to when Mrs. King took the witness stand. During the cross-examination of Postal Inspector Ryan, trial counsel asked whether Mrs. King was tricked or deceived into signing the consent. (TT 10/10/08: 19-21, App. Vol. II. At 58-60). Additionally, during the testimony of Special Agent Ronald Manning, trial counsel inquired into whether there was any coercion used against Mrs. King during the search of the home. (TT. 10/09/08: 211, App. Vol. II. at 42).

Second, whether trial counsel was aware of what Mrs. King would say prior to when she took the witness stand is of no moment because, assuming trial counsel were unaware, at the moment he became aware he became duty bound to then seek the suppression of the evidence. See Fed. R. Cr. P. 12(b)(3) (a motion to suppress must be made prior to trial, "but the court may permit it to be made within a reasonable time thereafter"). Thus, whether trial counsel was aware or unaware

makes no difference. Either way, trial counsel made a prejudicial serious attorney error in failing to seek the suppression of the evidence.

Much of the Government's argument that Dr. King's ineffective assistance of counsel claim is not ripe for appeal rests on a misunderstanding of the precise relief that Dr. King now seeks. The Government's argument in this regard relies on the faulty premise that Dr. King now seeks reversal of his convictions. The precise remedy that Dr. King seeks through this appeal is a new suppression hearing to determine whether Mrs. King's consent for the search was voluntary. Dr. King's further argument is that, if successful in persuading the District Court during that suppression hearing that the computer evidence should have been suppressed, Dr. King would be entitled to a new trial. (See Brief of Appellant at 25-26).

## II.   TRIAL COUNSEL'S FAILURE TO SEEK THE SUPPRESSION OF THE COMPUTER EVIDENCE WAS A PREJUDICIAL SERIOUS ATTORNEY ERROR THAT ENTITLES DR. KING TO BE PLACED IN THE POSITION THAT HE WOULD HAVE BEEN HAD THE MOTION BEEN FILED.  THUS, DR. KING IS ENTITLED TO THE RIGHT TO FILE A BELATED SUPPRESSION MOTION AND TO A HEARING ON THAT MOTION.

The Government argues that in order for Dr. King to prevail on this claim, Dr. King must show a significant probability that the computer evidence would have been suppressed. (Brief of Appellee at 32). Alternatively, the Government argues that, even if the evidence was suppressed, the outcome of the case would

have been the same. (Brief of Appellee at 33-34).

A petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland v. Washington, 466 U.S. 668, 693 (1984); Nix v. Whiteside, 475 U.S. 157, 175 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Stated alternatively, with any given "serious attorney error," a petitioner can prevail on the "prejudice prong" even where there is less than a "51-49" chance that the "serious attorney error" affected the outcome.

The Government states "[Dr.] King assumes that his motion would have been granted, but does not provide any basis for that assumption." (Brief of Appellee at 35). Nowhere in Brief of Appellant does Dr. King assume that his motion would have been granted. Rather, Dr. King argues that trial counsel committed a prejudicial serious attorney error in not seeking to suppress the evidence, and that there is a reasonable probability, based on Mrs. King's testimony at trial, that, had trial counsel sought suppression of the evidence, the motion would have been granted. (Brief of Appellant at 25). As a result of trial counsel's error, Dr. King argues that, because he was denied the opportunity to a proceeding to determine whether the evidence should have been suppressed, he is

now entitled to file a belated suppression motion and entitled to a hearing on that motion. See generally, United States v. Headley, 923 F.2d 1079 (3d. Cir. 1991); United States v. Carson, 969 F.2d 1480 (3d. Cir. 1992); United States v. Shaefer, Michael & Clairton Slag, Inc., 637 F.2d 200, 205 (3d. Cir. 1980); Ford v. State, 184 Md. App. 535 (2009).

Dr. King maintains that there is a reasonable probability that the evidence would have been suppressed because under the relevant case law, Mrs. King's testimony, if believed, would have automatically resulted in suppression of the evidence because she emphatically stated that she was tricked into giving consent. (Brief of Appellant at 19-20). Therefore, because the only real issue to be resolved at the suppression hearing is Mrs. King's credibility, there is at least a significant probability that the evidence would have been suppressed.

Mrs. King testified that she was "tricked" and "deceived" into giving her consent to search the computers in her home. (TT 10/14/08: 97-98, App. Vol. II. at 113-14). Such testimony, if believed, would have resulted in suppression because her consent would be deemed involuntary and the subsequent search of the computers would be unconstitutional.

If a suppression court believed Mrs. King's testimony, the computer evidence would have been suppressed based on two arguments. On the one hand, as in Bumper v. North Carolina, 391 U.S. 543 (1968), Mrs. King's consent arose

directly from her submission to the authority of the warrant and not from her own free and unconstrained choice. Mrs. King believed that the law required her to acquiesce because the Government's agents made her believe that the computers were within the scope of the Government's warrant. (TT 10/14/08: 48, App. Vol. II. at 102). Indeed, Mrs. King unequivocally stated that, but for her belief that the computers were included within the scope of the warrant, she would not have consented to the search. (TT 10/14/08: 97-98, App. Vol. II. at 113-14).

Moreover, as in United States v. Parson, 599 F. Supp. 2d 592, 596 (W.D. Pa. 2009), Mrs. King's consent was procured by misrepresentations made by Postal Inspector Ryan. Specifically, Mrs. King claimed that she signed the consent forms because Postal Inspector Ryan incorrectly stated that the papers were only for inventory purposes. (TT 10/14/08: 97, App. Vol. II. at 113). Also, Mrs. King claimed that she was not provided with an opportunity to review the forms before signing. (TT 10/14/08: 97-98, App. Vol. II. 113-14). Because Postal Inspector Ryan made material misrepresentations that played a direct role in obtaining Mrs. King's consent, such consent was involuntary. Any and all evidence obtained on the basis of the invalid consent should have been suppressed.

The Government further asserts that Dr. King ignored the factors for determining the voluntariness of consent set forth in United States v. Crandell, 554 F.3d 79, 88 (3d. Cir. 2009) (quoting United States v. Wilson, 413 F.3d 382, 388

(3d. Cir. 2005)). (Brief of Appellee at 35-36). In <u>Crandell</u>, this court found that "the critical factors comprising a totality of the circumstances inquiry include the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting [party]." <u>Crandell</u>, 554 F.3d at 88. However, if Mrs. King's testimony were believed by the suppression court, these factors would be of little importance because, under no set of circumstances, would the evidence be admissible if Mrs. King was tricked into granting consent.

Furthermore, the Government's argument that evidence of Dr. King's guilt independent of the computer evidence was so overwhelming that Dr. King would have been convicted without the computer evidence overstates the evidence from other sources on the issue of Dr. King's *mens rea*. (Brief of Appellee at 37). The computer evidence was crucial to the Government's case, was strong circumstantial evidence of Dr. King's guilt and his efforts to cover up misconduct, and showed a deliberate pattern by Dr. King to cover up his fraudulent activities.

<u>**CONCLUSION**</u>

For the reasons set forth above and in Brief of Appellant, it is respectfully requested that this Court remand this case to the United States District Court for the Eastern District of Pennsylvania, with instructions to (1) permit Dr. King to file a Motion to Suppress the computer evidence found on the computers in the King

8

residence, (2) grant a hearing on the motion to suppress, and (3) if the District

Court determines that the evidence should have been suppressed, reverse Dr.

King's convictions.


s/ Michael P. Lytle_____
Michael P. Lytle, Esq., Bar # 27527
Warnken, LLC, Attorneys at Law
300 E. Joppa Road, Suite 303
Towson, Maryland 21286
443-921-1100
443-921-1111 (fax)

Counsel for Appellant
November 12, 2009


## CERTIFICATE OF BAR MEMBERSHIP

In accordance with 3rd Cir. LAR 46.1(e), Michael P. Lytle certifies that he is

a member of the Bar of this Court.

s/ Michael P. Lytle_____
Michael P. Lytle, Esq.


## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B)(ii) because this brief is 10 pages long.

s/ Michael P. Lytle_____
Michael P. Lytle, Esq.

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

In accordance with 3rd Cir. LAR 31.1(c), Michael P. Lytle certifies that the text of the E-Brief and hard copies of Reply Brief of Appellant are identical.

s/ Michael P. Lytle
Michael P. Lytle, Esq.

## CERTIFICATE OF VIRUS CHECK

In accordance with 3rd Cir. LAR 31.1(c), Michael P. Lytle certifies that a virus check was performed on the E-Brief filed with Symantec Endpoint Protection, Version: 11.0.4014.26.

s/ Michael P. Lytle
Michael P. Lytle, Esq.

## CERTIFICATE OF SERVICE

I hereby certify, this 12th day of November, 2009, that one copy of the Reply Brief of Appellant was served via CM/ECF and via first class, postage pre-paid mail upon the following:

Bea Witzleben, Esq.
Maureen McCartney, Esq.
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

s/ Michael P. Lytle
Michael P. Lytle, Esq.